UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
CAROLYN CHARLES CARRINGTON
Debtor

Chapter 13

CASE NO: 17-31281

CONNECTICUT HOUSING FINANCE AUTHORITY
    Movant
V.
CAROLYN CHARLES CARRINGTON
Debtor

May 9, 2018

MOTION FOR RELIEF FROM STAY

Connecticut Housing Finance Authority (Movant) hereby moves this
Court for an order as follows:

1.   The above-captioned debtors filed a Petition for Relief
pursuant to Chapter 13 of the Bankruptcy Code on August 22, 2017

2.   This Court has jurisdiction over this matter pursuant to 11
U.S.C. 362(d), 28 U. S. C. Section 1334 and 28 U.S.C. Section
157(b)(2)(G).

3.   Pursuant to 11 U.S.C. Section 362, all parties are enjoined
and stayed from commencing or continuing suit against the debtors.

4.   The debtor is the owner of real property known as 47 Seneca
Road, New Haven Connecticut and occupies the same.

5.   The Movant is a secured party by virtue of promissory note in
the original principal balance of $104,000.00, secured by a mortgage
to The McCue Mortgage Company a certain piece or parcel of land
situated in the Town of New Haven County of New Haven and State of
Connecticut, being known as 47 Seneca Road, New Haven, Connecticut,

which note and mortgage are attached hereto as Exhibits A and B1

6. The movant is the holder of both note and mortgaged alleged in Paragraph 5.

7. The property has an appraised value of $138,900.00 by virtue of the debtor's bankruptcy schedules, and the debt due movant on its secured claim is $38,807.22 pursuant to its proof of claim, plus interest, escrow advances and other lawful charges and constituting a first mortgage on debtors' primary residence is a fully secured claim.

8. The debtor's are due for the January 2018 post-petition payment to date.

9. The debtors are not adequately protecting the movant's fully secured interest in the subject property and have defaulted on his plan which provided for payment of current mortgage payments in addition to plan payments.

WHEREFORE, the movant represents that good cause exists for the granting of its motion for relief from stay for purpose of exercising its legal rights pursuant to its first mortgage on the subject real property

MOVANT,

By    /s/Kevin J. Burns
Kevin J. Burns, Esq.
COHEN, BURNS, HARD & PAUL
Its Attorneys
81 South Main Street
West Hartford, CT 06107
Tel 860 561 1036 Fax 860 247 2126
kburns@cbhplaw.com
Juris No. CT 03075

---

1 Note and mortgage granted by non-debtors John W Carrington & Hattie Charles. Hattie Charles deeded the property to Mr. Harrington in 1996. Mr. Harrington passed away in 2010 and the debtor is his surviving spouse.

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT

IN RE:
CAROLYN CHARLES CARRINGTON
Debtor

Chapter 13

CASE NO: 17-31281

CONNECTICUT HOUSING FINANCE AUTHORITY
    Movant
V.
CAROLYN CHARLES CARRINGTON
Debtor

May 9, 2018

### PROPOSED ORDER GRANTING RELIEF FROM STAY

After notice and a hearing, see Bankruptcy Code Section 102(1), on _____ (hereafter the "Movant") Motion for Relief from Stay (hereafter, the "Motion"), Doc. I.D. No.: 21

IT IS HEREBY ORDERED that the Motion is Granted- the automatic stay of 11 U.S.C. Section 362(a) is modified pursuant to 11 USC Section 362(d)(2) to permit the Movant, and/or its successors and assigns, to exercise its rights, if any, with respect to debtor's real estate located at 47 Seneca Street, New Haven, CT in accordance with applicable non-bankruptcy law.

Dated at _____ Connecticut, this _____ day of _____ 2018.

BY THE COURT

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
CAROLYN CHARLES CARRINGTON
Debtor

Chapter 13

CASE NO: 17-31281

CONNECTICUT HOUSING FINANCE AUTHORITY
    Movant
V.
CAROLYN CHARLES CARRINGTON
Debtor

May 9, 2018

NOTICE OF CONTESTED MATTER

    Connecticut Housing Finance Authority (Movant) hereby notifies all parties that it has filed a Contested Matter as defined under Federal Rule of Bankruptcy Procedure 9014.  The motion was filed, ECF____ on this date, May 9, 2018  there is a Response Deadline relative to said motion of fourteen (14) days which expires, May 23, 2018.  In the absence of a timely response, the proposed order may enter without further notice or hearing.

    MOVANT,

    By____/s/Kevin J. Burns
    Kevin J. Burns, Esq.
    COHEN, BURNS, HARD & PAUL
    Its Attorneys
    81 South Main Street
    West Hartford, CT 06107
    Tel 860 561 1036 Fax 860 247 2126
    kburns@cbhplaw.com
    Juris No. CT 03075

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
CAROLYN CHARLES CARRINGTON
Debtor

Chapter 13

CASE NO: 17-31281

CONNECTICUT HOUSING FINANCE AUTHORITY
    Movant
V.
CAROLYN CHARLES CARRINGTON
Debtor

May 9, 2018

## C E R T I F I C A T I O N

In accordance with the applicable provisions of the Federal Rules of Bankruptcy Procedure 2002 and 7004, the undersigned certifies that on the 9$^h$ day of May, 2018, the following documents were served on the U.S. Trustee and all appearing parties via the court's electronic filing system and by first class mail on the parties listed below:

1. Documents Served:
        Motion for relief from Automatic Stay
        Proposed Order
        Notice of Contested Matter
2. Parties Served by First class mail:

Carolyn Charles Carrington
47 Seneca Road
New Haven, CT 06515

Parties served electronically:

Sara Gould on behalf of Creditor HSBC Bank USA, National Association as Trustee
BKECF@bmpc-law.com

Casey R. Healey on behalf of Debtor Carolyn Charles Carrington
chealey@healey-law.com, healeynotices@gmail.com

Roberta Napolitano
rnapolitano@ch13rn.com, courtalerts@ch13rn.com

Roberta Napolitano on behalf of Trustee Roberta Napolitano
rnapolitano@ch13rn.com, courtalerts@ch13rn.com

Linda A. Russo on behalf of Creditor STATE OF CONNECTICUT -DEPARTMENT
OF REVENUE SERVICES
linda.russo@ct.gov

JoAnn C. Silvia on behalf of Creditor Connecticut State Employees Credit Union, Inc.
jsilvia@mbsclawyers.com, israelcr66973@notify.bestcase.com

U. S. Trustee
USTPRegion02.NH.ECF@USDOJ.GOV

MOVANT, CHFA
/s/Kevin J. Burns_____
COHEN, BURNS, HARD & PAUL
81 South Main Street
West Hartford, CT 06107
(860) 561-1036
Juris #CT 03075
kburns@cbhplaw.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

IN RE:
CAROLYN CHARLES CARRINGTON
Debtor                                              Chapter 13

                                            CASE   NO:   17-
                                     31281
CONNECTICUT HOUSING FINANCE AUTHORITY
        Movant
V.
CAROLYN CHARLES CARRINGTON
Debtor                                              May 9, 2018

## AFFIDAVIT OF DEFAULT

The undersigned, being duly sworn, deposes and says:

1.     That I am over 18 years of age and believe in the obligations of an oath.

2.     That I am the Foreclosure Specialist of McCue Mortgage Company, the servicer of the plaintiff in the above-captioned matter.

3.     That I have reviewed the records of the account of the above debtor and as of May 4, 2018 the amount due the plaintiff in connection with its mortgage in the above action is as follows:

| | |
|---|---|
| Partial balance, January 2018 | $    553.36 |
| Past due payments, Feb 2018-May 2018 @$1,109.00/month | $  4,436.00 |
| Late charges | $     88.40 |
| Net total due (before fees/costs) | $  5,077.76 |

Shenae McIntosh          (Affiant)
Subscribed and sworn to before me this 9th day of May, 2018

My Commission Expires

KIM M. STARBIRD
*NOTARY PUBLIC*
MY COMMISSION EXPIRES OCT. 31, 2019

# EXHIBIT

## A

AP

**Multistate**

# NOTE

FHA Case No.

[Date] JUNE     30, 1992          NORTH HAVEN

[Property Address]  47 SENECA ROAD
NEW HAVEN        , CT   06511

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means

The McCue Mortgage Co., P.O. Box 1000
and its successors and assigns.   New Britain, CT 06050

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of

ONE HUNDRED FOUR THOUSAND AND NO/100S ***********************
Dollars (U.S. $  104,000.00    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of     SIX
per cent (     6.000     %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A)  Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
AUGUST     01, 1992      . Any principal and interest remaining on the first day of     JULY     ,
2022     , will be due on that date, which is called the "Maturity Date."

### (B)  Place

Payment shall be made at    The McCue Mortgage Co., P.O. Box 1000
New Britain, CT 06050                    or at such other place as Lender may designate in writing
by notice to Borrower.

### (C)  Amount

Each monthly payment of principal and interest will be in the amount of $        623.53 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D)  Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.

VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291

FHA Multistate Fixed Rate Note - 2/91

VMP -1R (9103)

## 6. BORROWER'S FAILURE TO PAY

### (A)  Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four  per cent (  4.000 %) of the overdue amount of each payment.

### (B)  Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C)  Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs  and expenses including reasonable and customary attorneys' fees for enforcing this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _John W Carrington_ (Seal)
         -Borrower          JOHN W. CARRINGTON          -Borrower

_____ (Seal)          _Hattie Charles_ (Seal)
         -Borrower          HATTIE CHARLES          -Borrower

EXHIBIT

B

VOL 4499 PAGE 253

——— [Space Above This Line For Recording Data] ———

State of Connecticut

## OPEN-END MORTGAGE

FHA Case No.

THIS MORTGAGE ("Security Instrument") is given on      JUNE        30, 1992       . The Mortgagor is

JOHN W. CARRINGTON              HATTIE CHARLES

("Borrower"). This Security Instrument is given to       The McCue Mortgage Company

which is organized and existing under the laws of      Connecticut                      , and whose
address is      One Liberty Square, P.O. Box 1000, New Britain, CT 06050
                                          ("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED FOUR THOUSAND AND NO/100S****************************
                                          Dollars (U.S. $      104,000.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on      JULY       01, 2022
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the
security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to Lender and
Lender's successors and assigns the following described property located in
                                          NEW HAVEN             County, Connecticut:

See Schedule A attached hereto and made a part hereof.

which has the address of      47 SENECA ROAD              , NEW HAVEN           [Street, City],
Connecticut     06511          [Zip Code]  ("Property Address");
                                          FHA Connecticut Open-End Mortgage - 2/91
VMP  -4R(CT) (9103)        Page 1 of 6
                     VMP MORTGAGE FORMS - (313)293-6100 - (800)521-7291

McC-C35-23081

VOL 4499 PAGE 254

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, an installment of any (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required by paragraph 4.

Each monthly installment for items (a), (b), and (c) shall equal one-twelfth of the annual amounts, as reasonably estimated by Lender, plus an amount sufficient to maintain an additional balance of not more than one-sixth of the estimated amounts. The full annual amount for each item shall be accumulated by Lender within a period ending one month before an item would become delinquent. Lender shall hold the amounts collected in trust to pay items (a), (b), and (c) before they become delinquent.

If at any time the total of the payments held by Lender for items (a), (b), and (c), together with the future monthly payments for such items payable to Lender prior to the due dates of such items, exceeds by more than one-sixth the estimated amount of payments required to pay such items when due, and if payments on the Note are current, then Lender shall either refund the excess over one-sixth of the estimated payments or credit the excess over one-sixth of the estimated payments to subsequent payments by Borrower, at the option of Borrower. If the total of the payments made by Borrower for item (a), (b), or (c) is insufficient to pay the item when due, then Borrower shall pay to Lender any amount necessary to make up the deficiency on or before the date the item becomes due.

As used in this Security Instrument, "Secretary" means the Secretary of Housing and Urban Development or his or her designee. In any year in which the Lender must pay a mortgage insurance premium to the Secretary, each monthly payment shall also include either: (i) an installment of the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary. Each monthly installment of the mortgage insurance premium shall be in an amount sufficient to accumulate the full annual mortgage insurance premium with Lender one month prior to the date the full annual mortgage insurance premium is due to the Secretary, or if this Security Instrument is held by the Secretary, each monthly charge shall be in an amount equal to one-twelfth of one-half percent of the outstanding principal balance due on the Note.

If Borrower tenders to Lender the full payment of all sums secured by this Security Instrument, Borrower's account shall be credited with the balance remaining for all installments for items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note;

Fifth, to late charges due under the Note.

-4R(CT)                    Page 2 of 6

Vol. 4499 page 255

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Secretary determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lenders of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are

-4R(CT)                                                    Page 3 of 8

+99 PAGE256

referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) by the Borrower, and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note secured thereby not be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 9, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

(HUD)-4R(CT)                                        Page 4 of 6

VOL 4499 PAGE 257

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9.b. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of this Security Instrument.

**16. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 16.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke any of the remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**18. Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**19. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

VOL 4499 PAGE 258

**20. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider          ☐ Graduated Payment Rider      ☒ Other [Specify] Legal Description
☐ Planned Unit Development Rider  ☐ Growing Equity Rider          (Schedule A) and CHFA Rider and Tax
                                                                 Exempt Rider)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
Anthony J. Elia, Jr.                JOHN W. CARRINGTON            -Borrower

_____     _____ (Seal)
Virginia M. D'Ambruoso              HATTIE CHARLES               -Borrower

_____ (Seal)     _____ (Seal)
                            -Borrower                                    -Borrower

STATE OF CONNECTICUT,           NEW HAVEN          County ss:   NORTH HAVEN

The foregoing instrument was acknowledged before me this          JUNE      30, 1992
                                                                  (date)
by     John W. Carrington and Hattie Charles
                    (person acknowledging)

My Commission Expires:
                                         _____
                                         Commissioner of the Superior Court, Anthony J. Elia, Jr.
        ANTHONY J. ELIA JR.              XXXXXXXXXXXXXXXXXXXXXXXXXX
        ATTORNEY AT LAW
        270 QUINNIPIAC AVE.
        NORTH HAVEN, CT 06473    (Official Seal)
    -4R(CT)                              Page 8 of 8

VOL 4499 PAGE 259

SCHEDULE A

certain piece or parcel of land with all the improvements thereon
in the Town and County of New Haven, and State of Connecticut, known
47 Seneca Road, also known as Lot No. 12 as shown on Map of "Beverly
ton B; Wentville, New Haven, Connecticut, owned by Thomas F. Reil_
Conn., Scale 1 inch equals 60 feet, September, 1950, Frederick
Surveyor, on file in the New Haven Town Clerk's Office and bounded as

by Seneca Road, as shown on said Map,
70 feet, more or less;

by Lot No. 11, as shown on said Map,
193.32 feet, more or less;

by land of owners unknown, 62 feet, more or less;

by Lot No. 13, as shown on said Map,
196.52 feet, more or less,

premises are subject to:

Building lines, if established, and any and all provisions of any
zoning regulation, governmental regulation, or public or private

restrictions as recorded in Volume 1787 at Page 41 of the New Haven Land

APPL #. 23081    VOL 4499 PAGE 260

Multistate

# NOTE

FHA Case No.
0611128552

[Date] JUNE    30, 1992        NORTH HAVEN

[Property Address]  47 SENECA ROAD
NEW HAVEN        , CT    06511

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means

The McCue Mortgage Co., P.O. Box 1000
and its successors and assigns.    New Britain, CT 06050

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of

ONE HUNDRED FOUR THOUSAND AND NO/100S ************************
Dollars (U.S. $  104,000 .00    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of    SIX
per cent (    6.000    %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result
if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
AUGUST    01, 1992        . Any principal and interest remaining on the first day of    JULY
2022    , will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at    The McCue Mortgage Co., P.O. Box 1000
New Britain, CT 06050            or at such other place as Lender may designate in writing
by notice to Borrower.
(C) Amount
Each monthly payment of principal and interest will be in the amount of $    623.53 . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.
(D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month.

Page 1 of 2

(VMP) -1R (9103)        VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291        FHA Multistate Fixed Rate Note - 2/91

VOL 4499 PAGE 261

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four per cent (    4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)        _John W Carrington_ (Seal)
                         -Borrower      JOHN W. CARRINGTON      -Borrower

_____ (Seal)        _Hattie Charles_ (Seal)
                         -Borrower      HATTIE CHARLES          -Borrower

VOL 4499 PAGE 262

NOTICE TO BORROWERS:

THIS RIDER ADDS SUBSTANTIALLY TO THE TERMS OF THE MORTGAGE.  DO NOT SIGN IT
UNTIL YOU HAVE READ AND UNDERSTOOD IT.
*******************************************************************************

## CHFA UNIFORM MORTGAGE RIDER

This Uniform Mortgage Rider is made this    30TH day of     JUNE  , 19 92,
and is incorporated into and amends and supplements a Mortgage dated of even
date herewith, given by  JOHN W. CARRINGTON          HATTIE CHARLES
(the "Borrower") to secure Borrower's Note to _____ THE MCCUE MORTGAGE COMPANY
_____ (the "Lender"), and covering the Property described in
the Mortgage and located at  47 SENECA ROAD
        NEW HAVEN, CT  06511                                   .
The Borrower and Lender acknowledge that the Mortgage and Note shall be
assigned to the Connecticut Housing Finance Authority (the "Authority").

1.    The Borrower, the Lender and the Authority acknowledge and agree that
the Mortgage is being made in conformity with the requirements without
limitation, of Chapter 134 of the General Statutes of Connecticut, as amended,
and the regulations adopted pursuant thereto, the Internal Revenue Code of
1986, (the "Code") and the procedures and regulations promulgated thereunder
which shall include the Home Mortgage Programs Operating Manual (the "Manual")
of the Authority (the "Requirements").   In the event that the Borrower has
misrepresented or omitted a material fact in the loan application of the
Borrower, or other documents submitted in support thereof, or does not comply
with the requirements of the loan commitment to the Borrower, the Mortgage, or
the Note which it secures, the Authority may not be in compliance with the
foregoing Requirements.  Such noncompliance may adversely affect the tax-exempt
status of the bonds issued by the Authority (the "Bonds"), and the ability of
the Authority to issue tax exempt bonds necessary to raise money to continue
its Home Mortgage Purchase Program, under which the Mortgage is being made.

2.    In recognition of the foregoing, and as a condition to the making of
the Mortgage, the Borrower covenants and agrees that the Lender, or the
Authority as the assignee of the Lender, may declare all sums secured by the
Mortgage to be immediately due and payable upon the occurrence of any of the
following:

a.    If all or any part of the Property or an interest therein is
sold or transferred by Borrower without the Authority's prior
written consent, excluding (a) the creation of a lien or
encumbrance subordinate to the Mortgage, (b) the creation of a
purchase-money security interest for household appliances, (c) a
transfer by devise, descent or by operation of law upon the death
of a joint tenant, or (d) a transfer made pursuant to court order
in an action for dissolution of marriage or partition of real
property.

b.    If the Borrower does not occupy the Property as the Borrower's
principal residence within sixty (60) days after the date hereof
and continue to occupy the Property as such principal residence
throughout the term of the Mortgage, or in the event this
Mortgage is being used to finance a Qualified Rehabilitation (as
such term is defined in the Manual of the Authority), the
construction of which is not required to be completed as of the
date hereof, within sixty (60) days after the date construction
has been completed.

c.    If the Borrower fails to supply any information or document to
the Lender or the Authority within ten (10) days after written
request therefor provided such information or document has been
requested in order to verify whether or not the Mortgage complies
with the Requirements and such other conditions of the
Authority's Home Mortgage Purchase Program under which this
Mortgage is being financed.

CHFA Form 025-0289 rev.
Page 1

L 4499 P262A

3.  The Borrower acknowledges that the Lender and the Authority have relied upon the information, statements and representations contained in the loan application, the Borrower Affidavit and other documents submitted in support of the loan application, in the processing, financing and granting of the Mortgage and in determining that the Requirements will be met. The Borrower represents that the information, statements and representations contained within the loan application, the Borrower Affidavit and said other documents are true and complete as of the date hereof and that there have been no material adverse changes therein. The loan application, the Borrower Affidavit and all other documents submitted in support of the loan application are incorporated herein and made a part hereof. Any misstatement or omission of a material fact in such documents will constitute a default under the Mortgage, and the Note which it secures, and may result in the Lender's or the Authority's declaring all sums secured by the Mortgage to be immediately due and payable. The Borrower agrees to hold the Lender and Authority harmless from any loss, cost or damages, actions or claims arising out of or related to a misstatement or omission of a material fact in the above described documents.

4.  Under the provisions of the Code, the Authority must pay or credit to borrowers earnings on certain non-mortgage investments in an amount, if any, determined under the Code. The amount and timing of the payment or credit will be made by the Authority at its sole discretion only as required by the Code to keep interest on the Bonds issued by the Authority exempt from Federal income taxes. The Authority is under no obligation to maximize or earn any amount which must be paid or credited to the borrowers. The Authority assumes no responsibility as to the treatment of this payment or credit for Federal income tax purposes and the Borrower accepts full responsibility for same. In the event this Mortgage is not financed with tax exempt bond proceeds subject to the Code, the provisions of this paragraph shall not apply.

5.  In the event of any conflict between the provisions hereof and the provisions of the Mortgage, or the Note which it secures, the provisions of this Uniform Mortgage Rider shall control.

6.  The term Borrower used herein shall include any reference to Mortgagor, Grantor, Debtor, or any party so described and defined in the mortgage loan documents. The term Lender used herein shall include any reference to Mortgagee, Grantee, Creditor, or any party so described in the mortgage loan documents.

WITNESS Anthony J. Elia, Jr.

BORROWER JOHN W. CARRINGTON

WITNESS Virginia M. D'Ambrinoco

WITNESS Anthony J. Elia, Jr.

BORROWER HATTIE CHARLES

WITNESS Virginia M. D'Ambrinoco

STATE OF CONNECTICUT )
                     ) ss.   NORTH HAVEN        JUNE 30 92
COUNTY OF            )

Personally appeared, JOHN W. CARRINGTON and HATTIE as aforesaid signer(s) and sealer(s) of the foregoing instrument and acknowledged the same to be his/her/their free act and deed, before me.

Commissioner of the Superior Court
xxxx Anthony J. Elia, Jr.
xxxxxxxxxxxxxxxxxxxxxxxxx
xxxxxxxxxxxxxxxxxxxxxxx

CHFA Form 025-0289 rev.
Page 2

( 14499 PAGE263   (

## TAX-EXEMPT FINANCING RIDER

THIS TAX-EXEMPT FINANCING RIDER is made this _____30th_____
day of ___June_____, 199 2 , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed
("Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Note ("Note") to __THE MCCUE MORTGAGE COMPANY_____
_____ ("Lender") of the same
date and covering the property described in the Security Instrument and located at:

47 Seneca Road, New Haven, Connecticut  06511
(Property Address)

In addition to the covenants and agreements made in the Security Instrument, Borrower
and Lender further covenant and agree as follows:

Lender, or such of its successors or assigns as made by separate instrument
assume responsibility for assuring compliance by the Borrower with the
provisions of this Tax-Exempt Financing Rider, may require immediate payment
in full of all sums secured by this Security Instrument if:

(a)   All or part of the Property is sold or otherwise transferred (other than by
devise, descent or operation of law) by Borrower to a purchaser or other
transferee:

(i)   Who cannot reasonably be expected to occupy the Property
as a principal resident within a reasonable time after the sale
or transfer, all as provided in Section 143(c) and (i) (2) of
the Internal Revenue Code; or

(ii)   Who has had a present ownership interest in a principal
residence during any part of the three-year period ending on
the date of the sale or transfer, all as provided in Section
143(d) and (i) (2) of the Internal Revenue Code (except that
"100 percent" shall be substituted for "95 percent or more"
where the latter appears in Section 143(d) (1)); or

(iii)   As an acquisition cost which is greater than 90 percent of the
average area purchase price (greater than 110 percent for
targeted area residences), all as provided in Section 143(e)
and (i) (2) of the Internal Revenue Code; or

(iv)   Who has a gross family income in excess of applicable
median family income as provided in section 143(f) and (i)
(2) of the Internal Revenue Code.

(b)   Borrower fails to occupy the Property described in the Security
Instrument without prior written consent of Lender or its successors or
assigns described at the beginning of this Tax-Exempt Financing Rider, or

(c)   Borrower omits or misrepresents a fact that is material with respect to the
provisions of Section 143 of the Internal Revenue Code in an application
for the loan secured by this Security Instrument.

Vol. 4499 page 263A

References are to the Internal Revenue Code of 1986, as amended, in effect on the date of execution of the Security Instrument and are deemed to include the implementing regulations.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions in this Tax-Exempt Financing Rider.

WITNESS Anthony J. Elia, Jr.

-BORROWER John W. Carrington

WITNESS Virginia H. D'Ambruoso

WITNESS Anthony J. Elia, Jr.

BORROWER Hattie Charles

WITNESS Virginia M. D'Ambruoso

STATE OF CONNECTICUT  )
                       ) ss. North Haven        June 30    ,199 2
COUNTY OF ~~HARTFORD~~ NEW HAVEN  )

Personally appeared, ___John W. Carrington_____, and ___Hattie Charles_____ as aforesaid signer(s) and sealer(s) of the foregoing instrument and acknowledged the same to be his/her/their free act and deed, before me.

Commissioner of the Superior Court
~~xxx Commissioner Notary Public~~ Anthony J. Elia, Jr.
~~My Commission Expires~~

007687

STATE OF CONNECTICUT } ss.
COUNTY OF NEW HAVEN

I, ..........................SALLY J. BROWN..........................~~XXXXXX~~Town Clerk of the town of New Haven, in said County and State, and keeper of the Records and Seals thereof, do hereby certify that the within and foregoing instrument is a true and correct copy of Record, as appears on the Records of said Town, in Volume...4499......on page...263 - 263A.......
    In Testimony Whereof, I have hereunto set my hand and affixed the seal of said Town, at New Haven, this......16th......day of ...FEBRUARY........... A.D. 19.93......


.........................................s~~XXXXXX~~Town Clerk

**VOL 4499 PAGE 264**

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that

THE MCCUE MORTGAGE COMPANY

a Connecticut corporation located in the Town of New Britain, County of

Hartford and State of Connecticut, hereby assigns to

CONNECTICUT HOUSING FINANCE AUTHORITY

located in the Town of

ROCKY HILL        County of HARTFORD        and State of CONNECTICUT      ,

a certain mortgage from   JOHN W. CARRINGTON        AND

HATTIE CHARLES        to THE McCUE MORTGAGE COMPANY in the

principal sum of    $104,000.00    dated   JUNE      30, 1992   and

recorded in the NEW HAVEN        Land Records in Volume     , at

Page    .

IN WITNESS WHEREOF, said corporation has affixed it seal this

30TH  day of    JUNE        , 1992 .

Signed, Sealed and Delivered

in the presence of:                         THE McCUE MORTGAGE COMPANY

_Kathleen M Carlson_                        By: _Donna M DiBenedetto_
KATHLEEN M. CARLSON                         Donna M. DiBenedetto
                                            Vice President
_Deborah L. Blaschke_                       Duly-Authorized
DEBORAH L. BLASCHKE

STATE OF CONNECTICUT:
                     :  ss. New Britain        JUNE        30, 1992
COUNTY OF HARTFORD   :

Personally appeared, Donna M. DiBenedetto ,Vice President  of The

McCue Mortgage Company, Signer and Sealer of the foregoing Instrument, and

acknowledged the same to be his/her free act and deed and the free act

and deed of The McCue Mortgage Company, before me.

_Deborah L. Blaschke_
DEBORAH L. BLASCHKE
Notary Public
My Commission Expires 7.31.96

MCU-C39-23081-DE

92 JUN30 PM 1:48        889700